**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| KARL B. MANUEL, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 20-1759 |
| | ) | District Judge David S. Cercone |
| v. | ) | Magistrate Judge Maureen P. Kelly |
| | ) | |
| C/O SERGENT WILES; C/O LT. DAILEY; | ) | Re: ECF Nos. 73, 77 |
| and M.P.A. MRS. DARLA COWDEN; C/O | ) | |
| JOHN DOE #1; C/O JOHN DOE #2 | ) | |
| | ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

### I.     RECOMMENDATION

It is respectfully recommended that the Court grant the Motion for Summary Judgment filed on behalf of Defendants Sgt. Wiles ("Wiles") and Lt. Dailey ("Dailey") (collectively, the "Corrections Defendants"), ECF No. 73. It is further recommended that the Court grant the Motion for Summary Judgment filed on behalf of Defendant Darla Cowden ("Cowden"), ECF No. 77. Finally, it is recommended that judgment be entered in favor of all Defendants.

### II.     REPORT

#### A.     FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Karl B. Manuel ("Manuel") brings this *pro se* prisoner civil rights action pursuant to 42 U.S.C. § 1983, and asserts claims against administrators, corrections staff, and a contracted medical provider employed at the State Correctional Institution at Fayette ("SCI – Fayette"). ECF No. 36, ECF No. 39.  In his verified Complaint, Manuel alleges that on January 23, 2019, two "John Doe" corrections officers escorted Manuel to a triage room to retrieve his personal property. ECF No. 36 at 2. Because of Manuel's status as an inmate in disciplinary custody, he was

1

handcuffed. A tether was attached to his handcuffs and was held by one of the officers. After he signed for his property, one of the John Doe officers yanked on the tether which caused Manuel to turn awkwardly. Manuel's knee hit a table and "snapped out of place." Id. at 3. The officer pulled the tether again and Manuel fell. Once on the ground, the officers kicked Manuel repeatedly and stomped on his wrist. Id.

After the alleged assault, Manuel asked for an ambulance and "EMT." Id. Dailey told the John Doe corrections officers "to pick [Plaintiff] up and put [him] in a chair; that the nurse was on his way." Id. The nurse arrived, took a photo of Manuel's head, and left. At that point, "[Dailey] informed somebody to go get one of those office chairs with wheels. [He] was AGAIN moved placed in the office chair and pushed to another housing unit. This cell is located on the lower level." Id. Through a later filed and unverified "Amending Civil Complaint," Manuel asserts that Dailey "was present also well aware what occurred as he stood by and observed what was happening. And as a on looker he did nothing to stop the plaintiff being attacked."[1] ECF No. 39 ¶ 6.

Manuel was moved to a cell that had oleoresin capsicum ("OC") spray residue. Manuel complains that because of exposure to OC spray residue, he suffered an asthma attack throughout the night. ECF No. 36 at 3. He pressed an emergency call button for medical assistance but heard only laughter in response. Id. The following morning, Manuel told Wiles "all what happened," and requested medical assistance to treat his asthma attack. Id. at 4, ECF No. 39 ¶ 7. Wiles told

---

[1] Manuel's Amending Civil Complaint "amends his civil complaint." ECF No. 39. In the interest of justice and in consideration of Manuel's *pro se* status, the Court treats the initial Complaint as the operative Complaint, as amended by the Amending Civil Complaint. See W. Run Student Hous. Assocs., LLC v. Huntington Nat. Bank, 712 F.3d 165, 171 (3d Cir. 2013) ("[T]he amended complaint 'supersedes the original and renders it of no legal effect, unless the amended complaint specifically refers to or adopts the earlier pleading.'" New Rock Asset Partners, L.P. v. Preferred Entity Advancements, Inc., 101 F.3d 1492, 1504 (3d Cir. 1996) (quoting Boelens v. Redman Homes, Inc., 759 F.2d 504, 508 (5th Cir. 1985)). This approach 'ensures that a particular claim will be decided on the merits rather than on technicalities.' Dole v. Arco Chem. Co., 921 F.2d 484, 487 (3d Cir. 1990))."

Manuel, "nobody cares for you here," and "when you die nobody will care. You will be dead before your days back here are over." ECF No. 36 at 4.

Manuel also brings claims against Cowden for negligence and deliberate indifference to his serious medical condition. Manuel alleges that on the day following the alleged assault, Cowden denied him medical treatment for asthma and in the weeks that followed, denied him diagnostic imaging, a wheelchair, and the right to be seen by an outside neurologist, orthopedic surgeon, and physical therapist. ECF No. 39 ¶ 8.

As a result of the alleged assault and Defendants' conduct, Manuel claims that he suffered an untreated asthma attack, tooth loss, knee and lower back pain, and permanent injury to his right hand and wrist. Id. Manuel seeks compensatory damages and declaratory relief. Id.

Fact discovery is now complete. The Corrections Defendants and Cowden present the pending Motions for Summary Judgment as to Manuel's remaining claims.[2] ECF Nos. 73, 77. Defendants contend that Manuel's medical and grievance records reflect that he was not assaulted, and that Defendants were never deliberately indifferent to his serious medical needs. ECF Nos. 74, 82.

---

[2] On September 1, 2022, the Court granted a Motion to Dismiss in favor of Defendants Superintendent Mark Capozza and Assistant Superintendent Eric Armel because Plaintiff failed to allege that either supervisor was personally involved in the underlying alleged misconduct. ECF No. 49. The Court also dismissed Manuel's claim arising out of his placement in a Restricted Housing Unit. Id. On November 2, 2023, the undersigned issued a Report and Recommendation recommending that the Court dismiss the John Doe defendants pursuant to Federal Rule of Civil Procedure 4(m) because Plaintiff had not identified either defendant to permit service of a summons and the Amended Complaint. ECF No. 86. Manuel objected to the Report and Recommendation. In his objections, Manuel repeats his allegations against the John Doe defendants but does not address his failure to identify them to permit service as required by Rule 4. ECF No. 87.

The caption in Manuel's initial Complaint also lists "Medical Provider of Address Unknown" as a defendant. ECF No. 36 at 1. When Manuel filed his "Amending Civil Complaint," this defendant was terminated as a party. Upon review, neither the initial Complaint nor Manuel's "Amending Civil Complaint" assert a claim against this unidentified defendant. Despite the opportunity to conduct discovery, Plaintiff has not identified this defendant by name to permit service of a summons and complaint in accordance with Federal Rule of Civil Procedure 4. For each of these reasons, and in accordance with Federal Rule of Civil Procedure 4(m), it is recommended that the Court dismiss "Medical Provider" as a party to this action.

In support of their Motion for Summary Judgment, the Corrections Defendants point to Manuel's grievance that he submitted to prison officials on the day of the incident. In that grievance, Manuel complained that he suffered his injuries when he fell on a wet floor.

> On 1/23/19 while coming from receiving my personal property I sustained injuries to my lower back, (R) knee also (R) hand and wrist.
>
> I fell while being handcuffed and escorted[.] I was wearing state issued dock sneakers that were to small size 12 therefore my feet was not all the way inside the shoes and I was forced to walk on the back of the shoes. There was not any type of indicator posted stating "slippery when wet[.]" All I know is after signing for my property and turning to leave my left leg slid on something wet on the floor causing my left leg to go into a split my right leg got caught on the table leg at the bottom which caused my right leg – n – knee to turn and twist outward, which cause me to go into a spread leg position[.] At the same time falling (the handcuffs were attached to a leather lea[s]h type implement) the c/o Remminger tried to break my fall and in doing so my back thrusted as I hit the floor[.] A back board or neck brace was never used[.] I was picked up placed in a chair and pictures was taken by medical of my head n knee (I'm seeking 1.3 million dollars)

ECF No. 76-2 at 9. Manuel complained that he informed medical staff that he was experiencing constant urination, spasms, swelling and numbness, and that the fall "reinjured" his back, wrist, and knee.[3] Id. SCI-Fayette's Grievance Coordinator reviewed and rejected the grievance on January 29, 2019, because it presented "different events" that must be separately grieved. Id. at 8. Manuel supplemented his grievance on January 31, 2019.

> On 1/23/19 I received also suffered [severe] pain and suffering when I was injured in a slip-n-fall incident while handcuffed which caused by no fault of mines.
>
> My left leg slipped from underneath me causing me to go into split position while at the same time my right foot also ankle was caught by the bottom of a table leg both to turn and twist to the outside awkwardly by me being handcuffed also attached to a leathe[r] restraint that was on the handcuffs[.] The officer attempted to try and catch me but failed therefore the leather strap twist my back as I fell to the floor. I'm seeking 6.1 million dollars in damages.

---

[3] These allegations are not set forth in Manuel's verified Complaint, nor directed at Cowden. See ECF No. 36. Manuel does not allege that he raised these physical ailments with Dailey or Wiles or that either reviewed his grievance.

Id. at 7. On February 22, 2019, the Grievance Officer denied Manuel's supplemental grievance as frivolous because an investigation revealed that at the time of the incident, medical staff were notified and assessed Manuel's condition. Medical staff cleared Manuel to return to his cell and advised him to put in a sick call slip to be seen. Id. at 4.

Manuel submitted an appeal to the Facility Manager on March 12, 2019, and complained that the initial medical assessment was conducted by an unqualified nurse. Id. at 3. In addition, Manuel asserted that,

> ….[severe] injuries was sustained the MAIN contributor fact being because of the tether restraint strap in this case upon falling downward and the escorting correctional officer natural instinct reflex along with training instructions to pull the/me[.] My body turned and twisted awkwardly therefore the combination of falling turning twisting from being pulled in the opposite direction contributed to my current state of being which is damage to my (R) wrist n hand (R) knee and lower lumbar 4 and 5 …. So the question of DOC 6.3.1 section (33) the restraint is in fact and the method/injuries sustained because of DOC (SOP) standard of operation played a lucrative part. Had not SOP restraint (tether) the pull n twist would not occurred.

Id. On March 19, 2019, the Pennsylvania Department of Corrections Secretary's Office of Inmate Grievances and Appeals ("SOIGA") rejected an appeal to final review because Manuel had not yet received a response from the Facility Manager. Thus, his appeal to SOIGA was premature. Id. at 1. On April 9, 2019, the Facility Manager upheld the initial response. Id. at 2. There is not evidence that Manuel timely appealed the Facility Manager's April 9, 2019 decision for final review by SOIGA.

Manuel submitted a second grievance at No. 783523 on January 24, 2019, the day following the incident, and again stated that his injuries occurred when he "slipped and fell coming out from receiving my property." ECF No. 76-1. He complained that he repeatedly requested medical treatment but was ignored until the 2 p.m. shift, when "Sgt Wiles came around and told me "no body cares." Id. Manuel requested $50,000 per day "until this matter is settled in court."

Id. On February 7, 2019, the Grievance Coordinator denied Manuel's grievance because he "verified" that Manuel was "seen by P.A. Cowden on 1/23/19 pertaining to [his] medical concerns."[4] ECF No. 76-1 at 5. The Grievance Coordinator also confirmed that Manuel was scheduled for follow-up medical appointments and stated that he found no evidence that Wiles made inappropriate statements. Id.

Manuel appealed the denial of his second grievance to the Facility Manager and asserted that he was not seen by Cowden "until days after" an initial assessment by Nurse Ken. Id. at 3. According to Manuel, Cowden came to Manuel's cell and "started coughing" from the OC spray residue in his cell. Id. The Facility Manager upheld the initial response on April 9, 2019. Id. at 2. There is no evidence that Manuel appealed the response to final review. However, a premature appeal filed to SOIGA was not addressed because Manuel had not yet appealed the initial grievance denial to the Facility Manager. ECF No. 76-2 at 1. SOIGA encouraged Manuel to review the DOC Grievance Policy to ensure he was familiar with grievance submission procedures. Id.

Manuel's medical records reflect that shortly after the alleged incident, a Licensed Practical Nurse ("LPN") examined him and completed a Medical Incident/Injury Report. The report includes Manuel's statement that he "fell and hurt my lower back[] and right knee." ECF No. 76-3. The LPN assessed Manuel using a Nursing Evaluation Tool for back pain and placed him on morning sick call for further evaluation. ECF No. 76-4. The evaluation reflects Manuel's statement that "I was walking and my knee gave out, I fell, my knee and back hurts." Id. at 1.

Manuel was seen by Cowden the day after the incident. Cowden's progress notes include Manuel's statement that he "slipped on wet floor" and that his knee and back were injured. ECF

---

[4] Manuel's medical records reflect that he was seen by Cowden on January 23, 2019, at 12:40 p.m. ECF No. 76-6 at 3. The incident at issue occurred at 8:45 p.m. ECF No. 76-3 at 1. Cowden next saw Plaintiff on January 24, 2019, for a sick call related to injuries sustained in the fall and complaints of respiratory issues. ECF No. 76-5 at 2.

No. 76-5 at 2. Manuel complained that he was having respiratory symptoms and needed a breathing treatment. He attributed his symptoms to the odor from the OC spray in his cell. Cowden determined Manuel was breathing easily, without labored breaths, and was conversing well without difficultly. She discussed Manuel's history of knee surgery on his right knee and wrist and back issues. His hand did not display any gross deformity but was swollen. His knee was not swollen or discolored. She observed that Manuel walked "stiff legged," but when she asked to see his inhaler, Manuel "was able to bend forward to lift up his right pant leg without grimacing." Id. at 2-3. Cowden told him she would provide "another type of pain medication" and order x-rays to be completed the next day. Id. Cowden ordered x-rays of his lumbar sacral spine, right hand, and right knee, and prescribed Celebrex for pain. She directed that the imaging "needs done tomorrow," and asked staff to speak with her to see if housing block staff could bring him to medical to get the x-rays so she could "examine him better of course he may not be able to walk that far." Id. at 1.

Based on Manuel's grievance and medical records, the Corrections Defendants contend that: (1) Manuel cannot sustain his claim against Dailey for failure to protect or for deliberate indifference to his medical condition; (2) Manuel failed to exhaust administrative remedies related to his claims of deliberate indifference to his asthma and OC spray exposure; and (3) even if Manuel's claims related to medical treatment are considered exhausted, he received appropriate medical care throughout the relevant period. Thus, the Corrections Defendants argue that there is no evidence that they were deliberately indifferent to Manuel's serious medical needs. ECF No. 73 ¶ 9.

Cowden asserts that summary judgment is properly entered in her favor because the undisputed evidence shows that Manuel received medically suggested care, and there is no

evidence of deliberate indifference to his serious medical needs. ECF No. 82 at 9. Manuel's negligence claim also fails because he has not filed a Certificate of Merit as required by Pennsylvania law. Id. at 18-20.

In his brief in opposition to the pending motions for summary judgment, Manuel repeats his claims that he suffered an assault and deliberate indifference to his serious medical condition. ECF No. 84. He also argues that there are issues of fact that preclude the entry of summary judgment. To that end, Manuel presents affidavits from other inmates to establish that he suffered back pain and additional falls in the weeks following the incident at issue. ECF No. 84-1 at 5-6, 9, 11. The record also contains the unsworn statements of several inmates to corroborate Manuel's claims of exposure to OC spray, untreated asthma, and his requests for medical treatment that he contends went unanswered. Id. at 2-4, 7-8, 10.

The Motions for Summary Judgment are ripe for consideration.

**B.      STANDARD OF REVIEW**

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is a fact whose resolution will affect the outcome under applicable law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A material fact is in genuine dispute if the evidence is such that a reasonable factfinder could return a verdict for the nonmoving party. Id. See also Doe v. Abington Friends Sch., 480 F.3d 252, 256 (3d Cir. 2007) ("A genuine issue is present when a reasonable trier of fact, viewing all of the record evidence, could rationally find in favor of the non-moving party in light of his burden of proof.").

The moving party has the initial burden of proving to the district court the absence of evidence supporting the non-moving party's claims. Celotex Corp. v. Catrett, 477 U.S. 317 (1986); Country Floors, Inc. v. P'ship Composed of Gepner and Ford, 930 F.2d 1056, 1061 (3d Cir. 1991). The burden then shifts to the non-movant to come forward with specific facts showing a genuine issue for trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574 (1986); Williams v. Borough of W. Chester, Pa., 891 F.2d 458, 460–61 (3d Cir. 1989) (the non-movant must present affirmative evidence—more than a scintilla but less than a preponderance—which supports each element of his claim to defeat a properly presented motion for summary judgment). Thus, summary judgment is warranted where, "after adequate time for discovery and upon motion ... a party ... fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Marten v. Godwin, 499 F.3d 290, 295 (3d Cir. 2007) (quoting Celotex Corp. v. Catrett, 477 U.S. at 322-23).

### 2. Pro Se Pleadings and Filings

Manuel is proceeding *pro se*. Thus, he is entitled to liberal reading of his pleadings and documents filed in opposition to the pending motion. Porter v. Pennsylvania Dep't of Corr., 974 F.3d 431, 440 (3d Cir. 2020) (quoting Higgs v. Att'y Gen. of the U.S., 655 F.3d 333, 339 (3d Cir. 2011) ("[t]he obligation to liberally construe a pro se litigant's pleadings is well-established.")). If the court can reasonably read pleadings to state a valid claim on which the litigant could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax, and sentence construction, or litigant's unfamiliarity with pleading requirements. Boag v. MacDougall, 454 U.S. 364 (1982); U.S. ex rel. Montgomery v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969) (A "petition prepared by a prisoner ... may be inartfully drawn and should ... be read 'with a measure of tolerance'"); Freeman v. Dep't. of Corr., 949 F.2d 360 (10th Cir. 1991).

Even so, at the summary judgment stage of the proceedings, the Court need not credit bald assertions or legal conclusions unaccompanied by evidentiary support. Jones v. United Parcel Serv., 214 F.3d 402, 407 (3d Cir. 2000). "[A] pro se plaintiff is not relieved of his obligation under [Federal Rule of Civil Procedure] 56 to point to competent evidence in the record that is capable of refuting a defendant's motion for summary judgment." Dawson v. Cook, 238 F. Supp. 3d 712, 717 (E.D. Pa. 2017) (citation omitted). See also Boykins v. Lucent Techs., Inc., 78 F. Supp. 2d 402, 408 (E.D. Pa. 2000) ("merely because a non-moving party is proceeding pro se does not relieve him of the obligation under Rule 56(e) to produce evidence that raises a genuine issue of material fact"); Winfield v. Mazurkiewicz, No. 11-584, 2012 WL 4343176, at *1 (W.D. Pa. Sept. 21, 2012).

In this case, Manuel's initial Complaint is verified. ECF No. 36 at 5. Thus, the factual allegations in his initial Complaint, to the extent that they are based on personal knowledge, will be considered as evidence in opposition to the summary judgment motion. Parkell v. Danberg, 833 F.3d 313, 320 (3d Cir. 2016) ("[b]ecause [plaintiff's verified complaints] were signed under penalty of perjury in accordance with 28 U.S.C. § 1746, we consider them as equivalent to statements in an affidavit"). See also Jackson v. Armel, No. 17-1237, 2020 WL 2104748, at *5 (W.D. Pa. May 1, 2020) (citing Reese v. Sparks, 760 F.2d 64, 67 (3d Cir. 1985)) (treating verified complaint as an affidavit on summary judgment motion); Brooks v. Kyler, 204 F.3d 102, 108 n. 7 (3d Cir. 2000) (noting that an affidavit is "about the best that can be expected from [a pro se prisoner] at the summary judgment phase of the proceedings"). However, Manuel did not verify his Amending Civil Complaint. Thus, the Court cannot treat the statements contained in that document as the equivalent of an affidavit. Wilson v. Phillips, No. 20-620, 2022 WL 3371403, at *2 n.3 (W.D. Pa. July 21, 2022) (citing Ziegler v. Eby, 77 F. App'x 117, 120 (3d Cir. 2003)); 11

MOORE'S FEDERAL PRACTICE-CIVIL § 56.94[2A], ("A verified pleading may serve as an affidavit or declaration for purposes of summary judgment to the extent that it meets the requirements for summary judgment affidavits and declarations.... However, an unverified pleading may not be used as summary judgment evidence."). Similarly, the statements of other inmates that were not signed under penalty of perjury in accordance with 28 U.S.C. § 1746 may not be used as evidence. See U.S. ex rel. Doe v. Heart Sol., PC, 923 F.3d 308, 315 (3d Cir. 2019) (a statement that is unsworn and not given under penalty of perjury is insufficient to create an issue of fact on summary judgment).

## C.   DISCUSSION

### 1.   Corrections Defendants

#### a. Eighth Amendment - Failure to Intervene

Turning first to Manuel's claim against Dailey for failure to intervene, the Corrections Defendants acknowledge that a constitutional duty to act arises if a prison official "knew of and disregarded an excessive risk to inmate health." ECF No. 75 at 6. In the context of an assault on an inmate, the Corrections Defendants also agree that an Eighth Amendment claim for deliberate indifference is presented if a prison official has "a realistic and reasonable opportunity to intervene" but "simply refuse[s] to do so." ECF No. 74 at 5 (citing Smith v. Mensinger, 293 F.3d 641, 650 (3d Cir. 2002)). Manuel's contemporaneous grievances and medical records contradict his later allegation that an assault took place. Id. at 5-7. Based on this discrepancy, the Corrections Defendants assert that Dailey could not have had an opportunity to intervene in an assault that never took place and, therefore, Manuel cannot maintain a claim against him for deliberate indifference. Id.

Upon review, the Court finds that Manuel's verified Complaint is the equivalent to an affidavit and must be construed in the light most favorable to him. Parkell, 833 F.3d at 320 n.2. This evidence is enough to raise a genuine issue of material fact as to whether the John Doe defendants assaulted Plaintiff. Yet, the Court agrees that there is no support in the record for Manuel's claim that Dailey had "a realistic and reasonable opportunity to intervene" but "simply refuse[d] to do so." Smith, supra.

The verified Complaint does not contain an allegation that Dailey was present during the assault or had an opportunity to prevent an assault but failed to do so. ECF No. 36 at 2-3. Instead, Manuel alleges under penalty of perjury that after the alleged assault he requested medical attention and an ambulance staffed by EMTs, but Dailey "informed C/O's John Doe #1 and John Doe #2 to pick me up and put me in a chair that the nurse was on his way." Id. Manuel alleges for the first time that Dailey was present at the time of the attack in his unverified Amending Civil Complaint and repeats this later allegation in his brief in opposition to the pending motion for summary judgment. ECF No. 39 ¶ 6, ECF No. 84 at 4. The law is well-settled that an unsworn declaration is insufficient to create an issue of fact on summary judgment. See Doe v. Heart Sol., 923 F.3d at 315. Under these circumstances, there is no evidence that Dailey was present during the alleged assault, had an opportunity to stop an assault, and yet failed to intervene. Thus, there is no disputed issue of material fact as to whether Dailey was deliberately indifferent to a serious risk of harm. Under these circumstances, summary judgment is properly entered in Dailey's favor as to Manuel's Eighth Amendment failure to intervene claim.

### b. Failure to Exhaust – Medical Claims

The Corrections Defendants seek the entry of summary judgment in their favor as to Manuel's claim for deliberate indifference arising from his to exposure to OC spray and an asthma

attack because Manuel failed to properly exhaust his available administrative remedies. ECF No. 74 at 7-10.

The Prison Litigation Reform Act ("PLRA") states that a prisoner cannot bring an action under Section 1983 "until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This mandatory exhaustion requirement applies to "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002). "Exhaustion is considered separately for each claim brought by an inmate, and if a complaint includes both exhausted and unexhausted claims, courts will dismiss the latter but not the former." Shifflett v. Korszniak, 934 F.3d 356, 364 (3d Cir. 2019).

The exhaustion requirement of the PLRA is one of "proper exhaustion." Woodford v. Ngo, 548 U.S. 81, 84 (2006). Failure to comply with the procedural requirements of the available grievance system will result in a claim being found procedurally defaulted. Id. at 90; Spruill v. Gillis, 372 F.3d 218, 227-32 (3d Cir. 2004); Robinson v. Superintendent Rockview SCI, 831 F.3d 148, 153 (3d Cir. 2016). In assessing default, the prison's grievance policy is what "define[s] the boundaries of proper exhaustion." Jones v. Bock, 549 U.S. 199, 218 (2007).

The Pennsylvania Department of Corrections' administrative remedies for inmate grievances are set forth in DOC Administrative Directive 804 ("DC-ADM 804"). See DOC Policies, DC-ADM 804, Inmate Grievance System Policy.[5] DC-ADM 804 provides a three-step process through which inmates can seek to resolve issues relating to their incarceration. Id. The three steps are: (1) file an initial grievance; (2) appeal to the superintendent; and (3) final appeal to SOIGA. Redshaw v. Pillai, No. 12-190, 2013 WL 3802464, at *3 (W.D. Pa. July 18, 2013).

---

[5] https://www.cor.pa.gov/About% 20Us/Pages/DOC-Policies.aspx

DC-ADM 804 also requires that in each grievance,

[t]he inmate must include a statement of the facts relevant to the claim.

a. The statement of facts shall include the date, approximate time, and location of the event(s) that gave rise to the grievance.

b. The inmate shall identify individuals directly involved in the event(s).

c. The inmate shall specifically state any claims he/she wishes to make concerning violations of Department directives, regulations, court orders, or other law.

d. If the inmate desires compensation or other legal relief normally available from a court, the inmate must request the specific relief sought in his/her initial grievance.

DC-ADM 804 §1.A.11.

If an inmate is dissatisfied with the response received from the Facility Grievance Coordinator, an appeal may be submitted in writing to the Facility Manager within fifteen working days. DC-ADM 804 § 2.A.1.a. If the inmate remains dissatisfied following this second level appeal, the inmate must submit an Appeal for Final Review to the SOIGA within fifteen working days, and then the inmate will receive a final determination in writing within thirty days. DC-ADM 804 § 2.B. The policy provides that an appeal to the Facility Manager must be received by the inmate before submitting a final appeal. In addition, the appeal to the SOIGA must contain the reasons for appealing the Facility Manager's decision. Id. An inmate must follow each of the steps to properly exhaust his administrative remedies under the PLRA. See Booth v. Churner, 206 F.3d 289, 299 (3d Cir. 2000), aff'd, 532 U.S. 731(2001) (holding that plaintiff "did not take full advantage of the administrative procedures available to him" in failing to use steps two and three of DC-ADM 804).

Failure to exhaust is an affirmative defense under the PLRA. Jones v. Bock, 549 U.S. at 216. Thus, the Corrections Defendants have the burden of proving that Manuel failed to exhaust his available administrative remedies. See, e.g., Rinaldi v. United States, 904 F.3d 257, 268 (3d

Cir. 2018). The United States Court of Appeals for the Third Circuit has explained that if the defendant shows that the inmate failed to exhaust his administrative remedies, then "the inmate plaintiff bears the onus of producing evidence that the on-the-books remedies were in fact unavailable to him or her." West v. Emig, 787 F. App'x 812, 814 (3d Cir. 2019) (citing Rinaldi, 904 F.3d at 268). Absent a situation when administrative remedies are not "available," a court may not excuse an inmate's failure to exhaust "irrespective of any 'special circumstances.'" Ross v. Blake, 578 U.S. 632, 639 (2016).

Here, the Corrections Defendants argue that Manuel failed to properly exhaust administrative remedies because he never filed a grievance related to his claims against Wiles and Dailey for deliberate indifference to his exposure to OC spray and resulting asthma attack. ECF No. 74 at 7. Manuel fails to respond to this argument. ECF No. 84.

Upon review, the Court agrees that Manuel's claims against the Corrections Defendants related to OC spray exposure and asthma are barred because he failed to exhaust available administrative remedies. Defendants present Manuel's grievance records related to this incident. ECF Nos. 76-1, 76-2. The grievances do not refer to an asthma attack or exposure to OC spray residue. Thus, the Corrections Defendants have presented sufficient evidence that Plaintiff did not exhaust available administrative remedies related to exposure to OC spray and any resulting asthma attack.

Manuel does not address this issue or point to any evidence to establish that he completed the grievance process for his asthma-related claims in accordance with DOC's policy. ECF No. 76-1, ECF No. 76-2. In his verified Complaint, Manuel asserts he completed the process by sending "Memorandum" to SCI – Fayette's grievance coordinator and "OSCII" as of June 14, 2019. ECF No. 36 at 5. But these assertions support the Correction Defendants' contention that

Manuel did not timely or properly complete the grievance process, and thus are not enough to raise a genuine issue of material fact. Id.

On this record, the Corrections Defendants have shown that there is no genuine dispute over whether Manuel exhausted his administrative remedies for his medical claims against Dailey and Wiles arising out of his alleged exposure to OC spray and an asthma attack on January 23-24, 2019. In turn, Manuel has not met his burden to demonstrate that the grievance process was unavailable to him. Thus, Manuel has failed to establish a genuine issue of material fact that he properly exhausted his administrative remedies as required by the PLRA, and summary judgment is properly entered in favor of Wiles and Dailey as to Manuel's Eighth Amendment claims of deliberate indifference arising out of OC exposure and asthma.

### c.      Deliberate Indifference to Medical Care

The Corrections Defendants move for summary judgment in their favor as to any remaining claims of deliberate indifference to Manuel's serious medical needs. ECF No. 73 ¶ 9. In this regard, the Court addresses only Manuel's claim against Dailey for failing to call an EMT because, for the reasons explained above, Manuel failed to exhaust available administrative remedies related to Defendants' alleged deliberate indifference to OC spray exposure and any asthma attack.

As to Dailey, the Corrections Defendants contend that it cannot reasonably be disputed that after the incident at issue, Manuel was under the care of medical professionals who assessed his condition. ECF No. 74 at 10-12. Therefore, liability under the Eighth Amendment cannot be imposed on Dailey, a non-medical prison official. Id.

In response, Manuel asserts that deliberate indifference is established by Dailey's failure to abide by Manuel's request to call an "EMT" to assess his injuries. ECF No. 84 at 4. In addition, he complains that Dailey instructed staff to pick Manuel up from the floor and place him in a chair

and instructed medical staff to take photos of Manuel's face and right knee. Id. Manuel contends

that as to these allegations, there are issues of fact that preclude entry of summary judgment. Id. at

4-6.

Upon review, the Court agrees that the Corrections Defendants' Motion for Summary

should be granted in their favor as to Manuel's medical indifference claim against Dailey.

The Eighth Amendment's prohibition against cruel and unusual punishment requires prison

authorities to provide medical care to inmates who must rely on them for treatment. Estelle v.

Gamble, 429 U.S. 97, 103-04 (1976). Because the denial of medical care may result in pain and

suffering that does not serve any penological interest, the law has long recognized that "deliberate

indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton

infliction of pain' proscribed by the Eighth Amendment. This is true whether the indifference is

manifested by prison doctors in their response to the prisoner's needs or by prison guards in

intentionally denying or delaying access to medical care or intentionally interfering with the

treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's

serious illness or injury states a cause of action under § 1983." Id. at 104-05 (internal citation

omitted).

That said, not "every claim by a prisoner that he has not received adequate medical

treatment states a violation of the Eighth Amendment." Id. To establish an Eighth Amendment

violation, a plaintiff must show: (1) a serious medical need; and (2) that the defendant was

deliberately indifferent to that need. Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999). See also

Spruill v. Gillis, 372 F.3d at 235. A serious medical need is "one that has been diagnosed by a

physician as requiring treatment or one that is so obvious that a lay person would easily recognize

the necessity for a doctor's attention." Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro,

834 F.2d 326, 347 (3d Cir. 1987). A serious medical need may also be found to exist where the denial or delay of treatment causes "unnecessary and wanton infliction of pain." Id.

To establish deliberate indifference, a "plaintiff must make an '*objective*' showing that the deprivation was 'sufficiently serious,' or that the result of defendant's denial was sufficiently serious. Additionally, the plaintiff must make a '*subjective*' showing that defendant acted with a 'sufficiently culpable state of mind.'" Montgomery v. Pinchak, 294 F.3d 492, 499 (3d Cir. 2002) (italics in original) (citing Wilson v. Seiter, 501 U.S. 294, 298 (1991)). "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Wilson v. Burks, 423 F. App'x. 169, 173 (3d Cir. 2011) (quoting Farmer v. Brennan, 511 U.S. 825, 837 (1994)).

However, "[i]f a prisoner is under the care of medical experts ..., a non-medical prison official will generally be justified in believing that the prisoner is in capable hands." Spruill v. Gillis, 372 F.3d at 236. "[A]bsent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official .... will not be chargeable with the Eighth Amendment *scienter* requirement of deliberate indifference." Id.

In this case, Manuel alleges that he asked Dailey to call an EMT to evaluate his injuries and that he not be moved. ECF No. 36 at 3. Dailey contacted prison medical staff and requested assistance. Manuel asserts that a nurse came to the scene, took a picture of his head, and instructed Manuel to put in a sick call slip. Id. Manuel's medical records reflect that the nurse observed and assessed Manuel's condition and cleared him to return to his cell for further assessment the next day. ECF No. 76-3, ECF No. 76-4. To the extent that Manuel alleges his care was inadequate because of errors in medical judgment, his claim against Dailey is not actionable under the Eighth

Amendment. Pearson v. Prison Health Serv., 850 F.3d 526, 543 (3d Cir. 2017) (non-medical staff was not deliberately indifferent "for failing to second-guess the medical staff's appraisal of the situation"); George v. Smock, No. 23-1519, 2023 WL 4447028, at *1 (3d Cir. Jul. 11, 2023) (citing Parkell v. Danberg, 833 F.3d at 337). Moreover, as applied to Dailey, "[w]here a prisoner has received some amount of medical treatment, it is difficult to establish deliberate indifference, because prison officials are afforded considerable latitude in the diagnosis and treatment of prisoners." Palakovic v. Wetzel, 854 F.3d 209, 227 (3d Cir. 2017). Manuel presents no evidence that Dailey had reason to know that the job title of the medical caregiver or the assessment conducted by the provider exposed Manuel to a substantial risk of harm. Nor is there any evidence (or a claim) that in the following days and weeks, Dailey knew Manuel was not receiving medically necessary care or that Dailey acted in some way to prevent necessary medical treatment. Thus, under controlling law, Dailey cannot be chargeable with the Eighth Amendment *scienter* requirement of deliberate indifference.

For each of the reasons explained above, it is recommended that summary judgment be granted in favor of the Corrections Defendants as to all claims asserted against them.

### 2.    Cowden

### a. Eighth Amendment

Manuel asserts an Eighth Amendment claim against Cowden based on deliberate indifference to his serious medical needs arising from the incident at issue. As explained above, to establish a violation of Manuel's constitutional right to adequate medical care, the evidence must show: (1) a serious medical need and (2) acts or omissions by Cowden that indicate a deliberate indifference to that need. Natale v. Camden Cnty. Corr. Facility, 318 F.3d 575, 582 (3d Cir. 2003).

The evidence in support of Cowden's Motion for Summary Judgment shows that when under Cowden's care, Manuel consistently received medical attention related to injuries sustained in his fall and his complaints of asthma.

On January 24, 2019, Manuel was seen by Cowden and was observed to be "in NAD [no apparent distress]. BREATHING EASILY...... IS NOT LABORED.... NOT GASPING FOR AIR, IS CONVERSING WELL WITHOUT DIFFICULTY....ALERT...ORIENTED X'S 3 IS ANXIOUS/ MORE AGIATED." ECF No. 76-6 at 2. When asked if he had his inhaler, Manuel reported that he had it but it was not helping "because of odor" from cell. Id. While Manuel disagrees, this evidence reveals that Cowden assessed Manuel's respiratory condition and determined that he did not require further treatment.

As for Manuel's complaints related to injuries sustained to his back, wrist, and knee, Cowden presents uncontested evidence that beginning on the day after the incident at issue and through his transfer four months later, she, along with other medical staff at SCI – Fayette, continuously treated Manuel's complaints of urinary frequency and knee and back pain. ECF No. 81-1. During each sick call appointment with Cowden, she conducted an evaluation, renewed or changed pain medication, referred Manuel to physical therapy and specialist appointments, or discussed Manuel's failure to comply with recommendations by a treating orthopedist for steroid injections and physical therapy.

| DATE | TREATMENT |
|---|---|
| 1/24/2019 | X-rays ordered on hand, back, and knee; pain medication ordered |
| 2/06/2019 | Prescribed additional muscle relaxant, laxative, wheelchair for use in General Population |
| 2/08/2019 | Reviewed lab results |
| 2/22/2019 | Referred Manuel to physical therapy for back and knee pain |
| 3/08/2019 | Attended telemed visit with orthopedist and followed up with recommendations for steroid injections and physical therapy |
| 3/14/2019 | Completed referrals for steroid injection and physical therapy |

| 4/10/2019 | Reviewed symptoms and current medications; prescribed alternative pain medication |
|---|---|
| 4/14/2019 | Reviewed Manuel's medications |
| 4/19/2019 | Reviewed Manuel's lab results; provided medication to address urinary frequency; changed medication for pain to address Manuel's continued complaints of pain and increased pain after physical therapy session |
| 4/22/2019 | Ordered lab tests to address Manuel's complaints of urinary frequency |
| 4/24/2023 | Changed Manuel's pain medication to address complaint that current medication caused heart palpitations |
| 5/1/2019 | Changed Manuel's pain medication due to continued complaints and instructed Manuel that he needed to comply with physical therapy prescribed by orthopedist to reduce spasms and stiffness |
| 5/20/2019 | Reviewed Manuel's medications |
| 5/24/2019 | Reviewed Manuel's chart in aid of transfer and conveyed Manuel was not compliant with orthopedist's recommendations for physical therapy and refused steroid injections. |

Id. Thus, the record reflects that Cowden consistently used her discretion to treat Manuel's ongoing complaints of pain. ECF No. 76-5 at 2-3, ECF No. 81-1. While the care provided by Cowden may not have been the kind or quality of treatment that Manuel would have preferred, "mere disagreement as to the proper medical treatment" is not enough to establish that Cowden acted in violation of a constitutionally protected right. Monmouth Cnty., 834 F.2d at 347; Rouse v. Plantier, 182 F.3d at 197 (claims of medical malpractice or negligence do not constitute deliberate indifference). Absent evidence that Cowden was deliberately indifferent to Manuel's serious medical needs, it is recommended that the Court grant Cowden's Motion for Summary Judgment as to Manuel's Eighth Amendment claim.

### b. Negligence

Cowden also seeks summary judgment in her favor as to Manuel's medical negligence claim because he failed to file a Certificate of Merit ("COM") as required by Pennsylvania Rule

of Civil Procedure 1042.3. ECF No. 82. Upon review, the Motion for Summary Judgment is properly granted on this basis.

Rule 1042.3 provides:

> In any action based upon an allegation that a licensed professional deviated from an acceptable professional standard, the attorney for the plaintiff or the plaintiff if not represented, shall file with the complaint or within sixty days after the filing of the complaint, a certificate of merit signed by the attorney or party.

Pa. R. Civ. P. 1042.3(a) (emphasis added).

Under the Rule, a COM must state either: (1) that an appropriate licensed professional has opined in writing that there is a reasonable probability that the defendant's care did not meet professional standards and caused the plaintiff's injury; (2) that the claim against the defendant is based on respondeat superior (in which case, the plaintiff must obtain an opinion from an appropriate licensed professional that there is a reasonable probability that the care provided by the defendant's agents did not meet professional standards and caused the plaintiff's injury); or (3) that expert testimony is unnecessary to the plaintiff's claim. Pa. R. Civ. P. 1042(a)(1-3).

"Pennsylvania practice also expressly provides plaintiffs with notice of Rule 1042.3's requirements and an opportunity to cure any failure to file a certificate of merit before a matter is dismissed." TranSystems Corp. v. Hughes Assocs., Inc., No. 14-1541, 2014 WL 6674421, at *5 (M.D. Pa. Nov. 24, 2014). Under Rule 1042.6:

> ... a defendant seeking to enter a judgment of non pros under Rule 1042.7(a) shall file a written notice of intention to file the praecipe and serve it on the party's attorney of record or on the party if unrepresented, no sooner than the thirty-first day after the filing of the complaint.

Pa. R. Civ. P. 1042.6(a). No judgment can be entered against a plaintiff for failure to timely file a certificate of merit until the defendant has complied with the notice requirements of Rule 1042.6(a). Pa. R. Civ. P. 1042.7(a)(4); Schmigel v. Uchal, 800 F.3d 113, 124 (3d Cir. 2015) ("The

condition of thirty days' notice prior to seeking dismissal of an action for failure to comply with the COM regime is substantive and must be applied in federal court.").

Upon good cause shown, a plaintiff may avoid dismissal of a professional liability claim if a timely motion to extend the time for filing a certificate of merit is filed with the court. Pa. R. Civ. P. 1042.3(d). "A motion to extend the time for filing a certificate of merit must be filed by the thirtieth day after the filing of a notice of intention to enter judgment of non pros on a professional liability claim under Rule 1042.6(a)."

Manuel alleges that Cowden failed to provide adequate treatment for the injuries he sustained in the incident at issue. This claim "is clearly 'an integral part of the process of rendering medical treatment' which involves professional medical judgment which is beyond the realm of the lay person." Folk v. Bureau of Prisons, No. 3:18-2252, 2021 WL 922063, at *4 (M.D. Pa. Mar. 10, 2021), aff'd, No. 21-1543, 2021 WL 3521143 (3d Cir. Aug. 11, 2021), cert. denied, 143 S. Ct. 133 (2022) (quoting Paige v. Holtzapple, No. 08-0978, 2009 WL 2588849, at *4 (M.D. Pa. 2009) ("Where the conduct at issue constituted an integral part of rendering medical treatment, and involved diagnosis, care, and treatment by a licensed professional, ... the action is one that is characterized as a professional negligence action requiring expert testimony."). "It cannot be said that a decision of whether, when or what type of treatment should be provided 'is so simple or the lack of skill or care is so obvious as to be within the range of experience and comprehension of even non-professional persons.'" Id. (quoting Hightower-Warren v. Silk, 698 A.2d 52, 54 n.1 (Pa. 1997)). Accordingly, a COM is required for Manuel's professional negligence claim.

The docket reflects that Manuel did not file a COM with his initial Complaint, ECF No. 1, ECF No. 36. On November 12, 2021, Cowden filed a "Notice of Intent to Dismiss Pursuant to PA. R.C.P. 1042.6 for Failure to Submit Certificate of Merit." ECF No. 25. Manuel did not move to

extend the time to file a COM. Rather, on January 21, 2022, Manuel sought to strike Cowden's proposed Motion to Dismiss based on Rule 1042.3 because he had been unable to obtain appointment of counsel and because he was not familiar with the requirements of Rule 1042.3. ECF No. 40 (erroneously titled "Notice of Intention to Enter Judgement of Non Pros on Professional Liability Claim"). Manuel cited the explanatory comments to Rule 1042.3 that contemplate a *pro se* litigant filing a COM. Id. at 2. To date, Manuel has not provided a "written statement from an appropriate licensed professional as required by subdivision[ ] (a) [ ] (2)." Pa. R. Civ. P. 1042.3(e).

Rule 1042.3 applies regardless of whether state law claims are brought under supplemental jurisdiction or under diversity jurisdiction. Liggon-Redding v. Est. of Sugarman, 659 F.3d 258, 264-65 (3d Cir. 2011) (holding that Pa. R.C.P. 1042.3 "is substantive law under the Erie [v. Tompkins, 304 U.S. 64 (1938)] Rule and must be applied as such by federal courts"); Iwanejko v. Cohen & Grigsby, P.C., 249 F. App'x 938, 944 (3d Cir. 2007) (holding that district court "correctly applied Rule 1042.3 as substantive state law"). The rule applies to *pro se* and represented plaintiffs alike and constitutes a rule of substantive state law with which plaintiffs in federal court must comply. Iwanejko, 249 F. App'x at 944. In this regard, "a pro se litigant's ignorance of or mistaken assumptions about the requirements of Rule 1042.3 cannot serve as a reasonable excuse." Perez v. Griffin, 304 F. App'x 72, 75 (3d Cir. 2008) (citing Hoover v. Davila, 862 A.2d 591, 595–96 (Pa. Super. Ct. 2004)).

Because Manuel failed to comply with Rule 1042.3, summary judgment for Cowden on Manuel's negligence claim is properly entered. Bilinski v. Wills Eye Hosp., 760 F. App'x 125, 128 (3d Cir. 2019) ("Liggon-Redding made clear that a Rule 1042.3(a)(3) COM may serve as the basis for summary judgment. 659 F.3d at 265. We reiterated this point in Schmigel v. Uchal, 800

F.3d 113, 122 (3d Cir. 2015), instructing that "the COM requirement and its conditions are facts that can form the basis for a motion for summary judgment.").

### D. CONCLUSION

For the foregoing reasons, it is respectfully recommended that the Court grant the Motion for Summary Judgment filed on behalf of Defendants Sgt. Wiles and Lt. Dailey, ECF No. 73. It is further recommended that the Court grant the Motion for Summary Judgment filed on behalf of Defendant Darla Cowden, ECF No. 77. It is also recommended that the Court dismiss the claims against the unidentified "Medical Provider" pursuant to Federal Rule of Civil Procedure 4(m). Finally, it is recommended that judgment be entered in favor of all Defendants and that the Clerk of Court mark the case closed.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1), and Local Rule 72.D.2, the parties may file written objections within fourteen days of the date of this Report and Recommendation, or seventeen days for unregistered ECF Users. Objections are to be submitted to the Clerk of Court, United States District Court, 700 Grant Street, Room 3110, Pittsburgh, PA 15219. Any party opposing objections may respond to the objections within 14 days. Local Civil Rule 72.D.2. Failure to timely file objections will waive the right to appeal. Brightwell v. Lehman, 637 F.3d 187, 193 n. 7 (3d Cir. 2011).

Dated: December 20, 2023

BY THE COURT:

MAUREEN P. KELLY
UNITED STATES MAGISTRATE JUDGE

cc:     The Honorable David S. Cercone
        United States District Judge

All counsel of record via ECF

Karl B. Manuel
00332040
James T. Vaughn Correctional Center
1181 Paddock Road
Smyrna, DE 19977